IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**ROXANNA HOLT**                                                                    **PLAINTIFF**

**V.**                       **CASE NO. 3:14-cv-03119**

**DEER-MT. JUDEA SCHOOL DISTRICT**                      **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Currently before the Court are Defendant Deer-Mt. Judea School District's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 29) and Memorandum in Support (Doc. 30), and Plaintiff Roxanna Holt's Response (Doc. 33). A Case Management Hearing was held on September 14, 2015. After hearing oral argument on the Motion at the Case Management Hearing, the Court took the Motion under advisement. The Court now **DENIES** Defendant's Motion to Dismiss. (Doc. 29).

**I. BACKGROUND**

Plaintiff Roxanna Holt, a female, is employed by Defendant Deer-Mt. Judea School District (the "School District" or the "District") as an elementary school principal. In her Second Amended Complaint, Holt has brought claims under Title VII of the Civil Rights Act of 1964, the Equal Pay Act, 42 U.S.C. § 1983, the Arkansas Civil Rights Act, and Ark. Code Ann. § 11-4-610, alleging employment discrimination on the basis of sex. Holt contends that the discrimination began in April of 2004 when the Deer School District merged with the Mt. Judea School District. Since that time, Holt has been paid less than her male comparator, Junior Edgmon, another elementary school principal in

1

the District. For the past five years, for example, she has been paid $57,054 per year, while Edgmon has been paid $64,800. Holt also points out that two other male elementary school principals in the District, Mr. Dye and Mr. Middleton, are being paid the same as her but have less experience. In addition to her compensation discrimination allegations, Holt asserts that she has faced other workplace discrimination, as (i) Edgmon has a secretary while Holt does not; (ii) Holt is required to teach and administer alternative learning environment classes while Edgmon is not; and (iii) other principals received educational money while she did not. Since 2004, Holt has made several attempts to persuade the school board and the superintendent, Mr. Denniston, to correct the pay disparity. She asserts that her requests and proposals have been repeatedly ignored, nixed, or opposed, sometimes with the promise of future action.

On or about January 19, 2014 Holt filed EEOC charge 493-2014-00339, alleging that the School District discriminated against her on the basis of her sex by paying Edgmon a higher salary for the last ten years. She received the EEOC's "Notice and Dismissal of Rights" on September 20, 2014 and filed suit in the instant case on December 12, 2014, seeking declaratory, compensatory, and injunctive relief. After Holt revised her Complaint twice, the School District filed an Answer and the Motion to Dismiss presently before the Court.

The School District's Answer admits that the pay disparity between Holt and Edgmon exists, but denies that the disparity is discriminatory. It further admits that Edgmon has a secretary while Holt does not, and that Edgmon is not required to teach and administer alternative learning environment classes, but denies that those

2

differences are discriminatory. Lastly, the Answer denies that the other principals received educational money while she did not. The School District's Motion to Dismiss argues that Holt's claims are time barred by the relevant statutes of limitations and administrative exhaustion requirements,[1] and that Ark. Code Ann. § 11-4-610 does not apply to Holt.

## II. LEGAL STANDARD

As a preliminary matter, the Court notes that Defendant's Motion to Dismiss did not state under which Federal Rule of Civil Procedure it was brought. Since the pleadings of both parties had been made at the time of the filing of the Motion, the Court will treat it as a motion made under Fed. R. Civ. P. 12(c) for judgment on the pleadings. *See Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). The distinction between a motion made under Fed. R. Civ. P. 12(c) and one made under Fed. R. Civ. P. 12(b)(6) "is purely formal, because we review this 12(c) motion under the standard that governs 12(b)(6) motions." *Id.*

To survive a motion to dismiss pursuant to Rule 12(b)(6), the complaint must present "a short and plain statement of the claim that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The intention of this is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In evaluating the sufficiency of the complaint, the Court assumes "all factual allegations in the pleadings are true and interpret[s] them in the light most favorable to the nonmoving

---

[1] The School District's Memorandum in Support does not address, and this Order does not consider, whether Plaintiff's workplace discrimination claims aside from her compensation discrimination claims are time-barred. The parties may address that issue on summary judgment or at trial.

3

party." *Bell v. Pfizer, Inc.*, 716 F.3d 1087, 1091 (8th Cir. 2013) (internal quotation omitted).

Even so, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). In short, "the pleading standard that Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). When considering a motion to dismiss, the Court ordinarily does not consider matters outside the pleadings, Fed. R. Civ. P. 12(d), but may consider exhibits attached to the complaint and documents that are necessarily embraced by the pleadings. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).

### III. DISCUSSION

### A. HOLT'S TITLE VII CLAIM

Title VII of the Civil Rights Act of 1964 makes it an "unlawful employment practice" to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). To pursue a cause of action under Title VII, a potential plaintiff must

first file an EEOC charge within, as relevant here, "one hundred and eighty days after the alleged unlawful employment practice occurred . . . ." 42 U.S.C. § 2000e-5(e)(1). This timing requirement was at the center of *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618 (2007), *overturned due to legislative action* (Jan. 29, 2009). Lilly Ledbetter was a female employee of Goodyear who, throughout her career, was paid less than her male colleagues in the same job position. She continued to receive disparate paychecks up until her retirement. Within 180 days of receiving her last paycheck, Ledbetter filed a complaint with the EEOC and eventually won her Title VII claim at trial. On appeal, Goodyear argued that Ledbetter's Title VII claim was time-barred because the discriminatory decisions that caused the discrepancy in pay occurred prior to the 180-day window in which she had to file an EEOC charge. The Eleventh Circuit, and then the Supreme Court, agreed with Goodyear. The Supreme Court held that a victim of compensation discrimination had to file with the EEOC within 180 days of an alleged discriminatory act, and that the issuance of a disparate paycheck was not a discriminatory act, but instead was a lasting effect of a past discriminatory act. *Ledbetter*, 550 U.S. at 632.

Congress swiftly superseded the Supreme Court's decision by passing the *Lilly Ledbetter Fair Pay Act of 2009*, Pub. L. No. 111-2, 123 Stat. 5 (Jan. 29, 2009) (the "FPA"). Congress found that the *Ledbetter* decision "significantly impair[ed] statutory protections against discrimination in compensation that Congress established and that have been bedrock principles of American law for decades." *Id*. Accordingly, the FPA amended Title VII to clarify that, in the context of compensation discrimination, a violation occurs "when a person is affected by application of a discriminatory

compensation decision or other practice, *including each time wages, benefits, or other compensation is paid*, resulting in whole or in part from such a decision or other practice." *Id.* (emphasis added). This provision reestablished what had become known as the "paycheck rule," which gets its name because each disparate paycheck resets the 180-day clock to file with the EEOC. The rule was widely recognized among the circuit courts prior to *Ledbetter*, including the Eighth Circuit. *See Ledbetter,* 550 U.S. at 655 (listing cases) (J. Ginsburg, dissenting); *Ashley v. Boyle's Famous Corned Beef Co.,* 66 F. 3d 164, 167-68 (8th Cir. 1995). Congress also made the FPA apply retroactively to May 28, 2007, the day before the *Ledbetter* decision was announced by the Supreme Court. Pub. L. No. 111-2.

The effect of this retroactivity provision is at the heart of the School District's Motion to Dismiss. The District argues that Holt's Title VII claims are time-barred because the alleged discriminatory decisions occurred prior to May 28, 2007. It reasons that (i) the *Ledbetter* Court's interpretation of Title VII constitutes the meaning of the law prior to May 28, 2007; and (ii) the FPA changes the meaning of the law retroactively beginning on May 28, 2007; so (iii) at the time the alleged discriminatory acts occurred, the paycheck rule was not the law. Because the paycheck rule was not in effect at the time the alleged discriminatory decisions were made, the School District's argument continues, Holt cannot benefit from it because "[a] discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed." (Doc. 30, p. 4 (quoting *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558 (1977))).

This Court disagrees with the District, and finds that its suggested interpretation of the FPA's retroactivity clause is incorrect. Congress' purpose in passing the FPA was to "nullif[y] the Ledbetter decision," *Reed v. Kucera*, 2009 WL 1451568 at *2 (D. Neb. May 20, 2009), and "to reinstate the law regarding the timeliness of pay compensation claims as it was prior to the *Ledbetter* decision." *Noel v. The Boeing Co.*, 622 F. 3d 266, 271 (3rd Cir. 2010) (quoting *Mikula v. Allegheny Cnty. of Pa.*, 583 F. 3d 181, 184 (3rd Cir. 2009)). This Court will not resurrect the *Ledbetter* decision when Congress has so clearly acted to bury it. By passing the FPA, and by taking the extraordinary step of including a retroactivity provision, Congress unequivocally declared that the *Ledbetter* Court's interpretation of Title VII was wrong. Congress clearly intends Title VII of the Civil Rights Act to include the paycheck rule, regardless of whether the initial alleged discriminatory decision(s) occurred before or after May 28, 2007.

The School District's Motion to Dismiss is therefore **DENIED** with respect to Holt's Title VII claim.

### B. HOLT'S EQUAL PAY ACT AND SECTION 1983 CLAIMS

The School District moves to dismiss Plaintiff's Equal Pay Act ("EPA") and Section 1983 claims on the grounds that the paycheck rule does not apply to either statute, and so the statute of limitations for each claim has run. While the FPA did not amend Section 1983 or the EPA, this Court disagrees with the District's conclusion that the paycheck rule does not apply to those statutes.

Whether the paycheck rule applies to Section 1983 claims related to compensation discrimination appears to be an issue of first impression in the Eighth Circuit. Providing persuasive guidance, the Seventh Circuit held in *Groesch v. City of*

7

*Springfield, Ill.*, 635 F. 3d 1020 (7th Cir. 2011), that the paycheck rule does apply to Section 1983 compensation discrimination claims. The *Groesch* court concluded "that there is no principled reason for applying the paycheck accrual theory to claims arising under Title VII but not to those arising under 42 U.S.C. § 1983. . . . [O]ur cases applying the paycheck accrual rule in the Title VII context, extend logically to equal protection claims arising under Section 1983." *Id.* at 1026.

This Court agrees with the *Groesch* court's reasoning. Prior to *Ledbetter*, the Eighth Circuit recognized the paycheck rule in Title VII cases. *See Ashley*, 66 F.3d at 168 ("[I]t is well-settled that '[e]ach week's paycheck that delivers less to a [woman] than to a similarly situated [man] is a wrong actionable under Title VII.'" (quoting *Bazemore v. Friday,* 478 U.S. 385, 395 (1986)). Also in *Ashley*, the Eighth Circuit recognized that the paycheck rule applies to the EPA. *Id.* at 168 ("Ashley's Equal Pay Act claim is timely for the same reason [referring to the paycheck rule]."). Since each disparate paycheck issued in a compensation discrimination case constitutes a new instance of discrimination under Title VII and the EPA, there is no principled reason why the rule should not be the same under Section 1983.

Accordingly, the School District's Motion to Dismiss Holt's EPA and Section 1983 claims is **DENIED**.

### C. HOLT'S STATE LAW CLAIMS

In addition to her federal claims, Holt's Second Amended Complaint seeks relief under the Arkansas Civil Right Act of 1993 ("ACRA"), Ark. Code Ann. § 16-123-101 *et seq.* and Ark. Code Ann. § 11-4-610. The School District has filed a motion to dismiss both claims, again arguing that such claims are time-barred because the paycheck rule

8

is not applicable to either state statute, and that Ark. Code Ann. § 11-4-610 is not applicable to Holt because she is an employee of an educational association.

### 1. Arkansas Civil Rights Act of 1993

The ACRA provides for the "right to obtain and hold employment without discrimination" on the basis of gender. Ark. Code Ann. § 16-123-107(a)(1). To perfect a claim under the ACRA, an individual must file suit within one year after the alleged discrimination occurred or within 90 days of receipt of a "Right to Sue" letter from the EEOC. Ark. Code Ann. § 16-123-107(c)(3). However, in order to rely on the 90-day window of time for filing suit after receiving a "Right to Sue" letter, a plaintiff's original filing with the EEOC must have been timely. *Burkhart v. Am. Railcar Indus., Inc.*, 603 F.3d 472, 476 (8th Cir. 2010) ("Because her EEOC charge alleging sexual harassment was untimely filed, Burkhart cannot rely on it to support the timeliness of her ACRA harassment claim."). The School District thus argues that the paycheck rule does not apply to the ACRA, and so Holt's EEOC charge was not timely filed.

The District bases its argument on Arkansas' courts rejection of the so-called "continuing-tort" theory. It argues that this theory is analogous to the paycheck rule and that this Court should, by extension, reject the application of the paycheck rule to the ACRA. *See Chalmers v. Toyota Motor Sales, USA, Inc.*, 326 Ark. 895, 906 (1996) ("[T]he continuing-tort theory is not recognized in Arkansas.").

The continuing-tort theory bases tort liability on a single negligent act, occurring prior to the statute of limitations, when the effects of that act continue into the statute of limitations period. *Lane v. Lane*, 295 Ark. 671, 674-75 (1988). But, the continuing-tort

theory is not analogous to the paycheck rule, and moreover, the ACRA instructs courts to look to federal law when interpreting its provisions.

The paycheck rule is premised on the recognition that each disparate paycheck received by a victim of discrimination is a new wrong in and of itself. *See Bazemore*, 478 U.S. at 395-96 ("Each week's paycheck that delivers less to a black than to a similarly situated white is a wrong actionable under Title VII, regardless of the fact that this pattern was begun prior to the effective date of Title VII."); *Ledbetter*, 550 U.S. at 654 ("In tune with the realities of wage discrimination, the Courts of Appeals have overwhelmingly judged *as a present violation* the payment of wages infected by discrimination: Each paycheck less than the amount payable had the employer adhered to a nondiscriminatory compensation regime, courts have held, *constitutes a cognizable harm*.") (J. Ginsburg, dissenting) (emphasis added). The paycheck rule, then, is not a doctrine resting on the lasting effect of a past act, but one declaring that each new paycheck is a distinct discriminatory act.

Moreover, "[c]laims premised under the Arkansas Civil Rights Act of 1993 are analyzed in the same manner as Title VII claims." *Henderson v. Simmons Foods, Inc.*, 217 F.3d 612, 615 n.3 (8th Cir. 2000). Indeed, in holding that the ACRA applies to workplace sexual harassment, the Arkansas Supreme Court noted "that the Arkansas Civil Rights Act expressly instructs us to look to federal civil-rights law when interpreting the Act." *Island v. Buena Vista Resort*, 352 Ark. 548, 557 (2003).

Accordingly, the Court concludes that the Arkansas Supreme Court would apply the paycheck rule to the ACRA and therefore **DENIES** the School District's Motion to Dismiss Holt's ACRA claim.

10

## 2. Ark. Code Ann. § 11-4-610

Ark. Code Ann. § 11-4-610(a) makes it illegal for an employer to "discriminate in the payment of wages as between the sexes" or "pay any female in his or her employ salary or wage rates less than the rates paid to male employees for comparable work." The School District argues that § 11-4-610 does not apply to Holt, because the law exempts employees "of any . . . educational . . . association, no part of the net earnings of which inure to the benefit of any private individual." Ark. Code Ann. § 11-4-607. Holt counters that she is not employed by an educational association, but "by a school district – a political subdivision of the State of Arkansas." (Doc. 33, p. 11). Though there appears to be no Arkansas case law interpreting the term "educational association," this Court is confident that the legislature's Act would not be interpreted as exempting employees of public school districts from the protection of § 11-4-610.

The exemption for employees of educational associations is found within a list that includes "employees of any social club, fraternal, charitable, educational, religious, scientific, or literary association, no part of the net earnings of which inures to the benefit of any private individual." Ark. Code Ann. § 11-4-607(1)(B). When interpreting the meaning of an ambiguous term contained within a list of related terms, courts apply the canon of *noscitur a sociis* (a word is known by the company it keeps), to "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words . . . ." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995). Here, the term "educational" is surrounded by terms normally used to describe private non-profit associations. Extending the meaning of "educational association" to include public school districts would render it inconsistent with its accompanying words.

The term "educational association" is also found in Ark. Code Ann. § 6-17-709:

> The Department of Education shall establish the curriculum under this section in collaboration with *educational agencies and associations*, including without limitation the: (1) Department of Higher Education; (2) Arkansas Association of Educational Administrators; (3) Arkansas Education Association; (4) Arkansas School Boards Association; (5) Arkansas Association for Supervision and Curriculum Development; (6) Arkansas State Teachers Association; and (7) Arkansas Rural Education Association.

Ark. Code Ann. § 6-17-709(d) (emphasis added). In this section, the legislature uses the phrase "educational agencies and associations" to refer to a list containing one public educational institution and six private ones. If the legislature intended the term "educational association" to encompass public educational institutions, then it would not have distinguished "educational agencies" from "educational associations" in § 6-17-709(d). Instead, the legislature would have referred to the entire list as only "educational associations."

Even if the term "educational associations" included public school districts, Ark. Code Ann. § 11-4-607(1)(B)'s list of exemptions is arguably superseded by Ark. Code Ann. § 11-4-601. Section 11-4-601, known as Arkansas' Equal Pay Act, declares that "*[e]very employer* in the state shall pay employees equal compensation for equal services, and *no employer* shall discriminate against any employee in the matter of wages or compensation solely on the basis of the sex of the employee." Ark. Code Ann. § 11-4-601(a) (emphasis added). This law, extending equal pay requirements to *every* employer, was passed in 1977, 22 years after Ark. Code Ann. § 11-4-607. While the Court finds that the term "educational associations" does not apply to public school districts regardless, it additionally questions whether the Arkansas Supreme Court would still consider Ark. Code Ann. § 11-4-607(1)(B)'s list of exemptions to be in effect.

Finally, the Court holds that the paycheck rule applies to Ark. Code Ann. § 11-4-610. Having determined that each paycheck constitutes a discriminatory act for the purposes of Title VII, the EPA, § 1983, and the ACRA, it would be inconsistent to now hold otherwise with respect to Ark. Code Ann. § 11-4-610.

Accordingly, the School District's Motion to Dismiss Holt's Ark. Code Ann. § 11-4-610 claim is **DENIED**.

## IV. CONCLUSION

For the reasons explained herein, Defendant Deer-Mt. Judea School District's Motion to Dismiss (Doc. 29) is **DENIED**.

**IT IS SO ORDERED** this 23rd day of September, 2015.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE